**VALLI KANE & VAGNINI, LLP**
*Attorneys for Plaintiff*
**600 OLD COUNTRY ROAD**
**GARDEN CITY, NY 11530**
**(516) 203-7180**

(S.F.)

**CV 11 0268**

FILED
IN CLERK'S OFFICE
U.S DISTRICT COURT E.D.N.Y

★ JAN 19 2011 ★

LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
RODERICK JENKINS,

              Plaintiff,

    v.

UNITED STATES DEPARTMENT OF JUSTICE -
BUREAU OF PRISONS

              Defendant.
------------------------------------------------------------X

COMPLAINT

**GARAUFIS, J.**
**POLLAK, M.**

**JURY TRIAL DEMANDED**

Plaintiff, Roderick Jenkins, by and through his attorneys Valli Kane & Vagnini LLP, brings this action for damages and other legal and equitable relief from the Defendant for violation of the laws proscribing race, color, disability discrimination, and retaliation stating the following as Plaintiff's claims against Defendant.

**JURISDICTION AND VENUE**

1.    This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, which confers original jurisdiction upon this Court for actions arising under the laws of the United States, and pursuant to 28 U.S.C. §§ 1343(3) and 1343(4), which confer original jurisdiction upon this Court in a civil action to recover damages or to secure equitable relief (i) under any Act of Congress providing for the protection of civil rights, including Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq*; (ii) under the Declaratory Judgment Statute, 28 U.S.C. § 2201; and (iii) under 42 U.S.C. § 1981 *et seq*., as amended and 42 U.S.C. §1981 *et*

*seq.*, as amended. The Court's supplemental jurisdiction is invoked pursuant to 28 U.S.C. § 1367(a), which confers supplemental jurisdiction over all non-federal claims arising from a common nucleus of operative facts such that they form part of the same case or controversy under Article III of the United States Constitution, including claims under the New York State Human Rights Law.

2. Venue is proper in this Court in as much as this judicial district lies in a State in which the unlawful employment practices occurred. Venue is also proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) and (c), in that Defendant maintains offices, conducts business and resides in this district.

## PARTIES

3. Plaintiff Roderick Jenkins ("Mr. Jenkins") was employed by Defendant Bureau of Prisons at its New York City location know as the Metropolitan Correctional Center – New York and resides at 21 Martin Luther King Drive, Hempstead, New York 11550.

4. Defendant U.S. Department of Justice – Bureau of Prisons ("BOP") is an employer with its principal place of business at 320 First St., NW, Washington, DC 20534.

5. The BOP Metropolitan Correctional Center ("MCC") facility is located at 150 Park Row, New York, NY 10007 and is the location at which plaintiff was employed.

## ADMINISTRATIVE EXHAUSTION

6. On August 30, 2010, Plaintiff filed a charge of discrimination with the Equal

Employment Opportunity Commission ("EEOC"), Charge No.: 520-2010-03600.

7. Plaintiff received a notice of Right to Sue Letter from the EEOC on or about October 19, 2010.

## STATEMENT OF FACTS

8. Plaintiff is a Black male who was employed with the Metropolitan Correctional Center ("MCC") with the United States Department of Justice, Federal Bureau of Prisons as an Intelligence Officer since January 1, 1999.

9. At various times during his tenure Plaintiff had top secret clearance.

10. Plaintiff held the title of Intelligence Officer GS-9, Step 10, for ten years. His job duties included gathering valuable information from Intel and acting as a liaison to the Executive Staff and Supervisors.

11. Plaintiff received multiple promotions, awards, and maintained an excellent work record.

12. On April 13, 2006, Plaintiff suffered a work related injury. He suffered a severe twist to his left ankle when stepping over a loose brick in Defendant's parking lot. The "twisted" ankle caused a fracture to Plaintiff's heel.

13. Plaintiff continued to work as the extent of the injury to his foot and ankle was not initially known.

14. However, in May of 2006, Plaintiff's injury worsened and he was directed by his doctor to not return to work. This work related injury also resulted in multiple surgeries on

Plaintiff's foot.

15. On or about July 12, 2006, Defendant issued Plaintiff a new Temporary Alternative Duty ("TAD") assignment which Plaintiff had to decline due to his doctor's orders.

16. Plaintiff's resulting disability limited his major life functions of standing and walking but Plaintiff was still able to perform essential functions involving gathering valuable information from Intel and acting as a liaison to the Executive Staff and Supervisors, with a reasonable accommodation in the form of a desk job.

17. Plaintiff was entitled to take time off due to his work related injury and he was also entitled to worker's compensation. Additionally, he was entitled to Continuation of Pay ("COP") which prevents the disruption of wages due to a disability or medical treatment after a traumatic injury. Pursuant to Defendant BOP's policy, Plaintiff was entitled to COP for forty-five days.

18. The Warden of the facility, Marvin Morrison, did not permit the processing of Plaintiff's injury related paperwork and caused a delay because he felt the injury did not qualify Plaintiff to receive worker's compensation. However, Plaintiff's injury did qualify for worker's compensation.

19. Defendant began charging Plaintiff's sick time, vacation time and Leave without Pay (LWOP) time, placed him on a temporary non-pay status and charged him absent from duty, instead of appropriately approving his worker's compensation.

20. Even when Plaintiff was finally awarded his worker's compensation, Defendant continued to improperly charge Plaintiff's annual and sick leave for the time he needed off for

his injury.

21. Upon information and belief, Morrison believed Plaintiff was faking his injury.

22. This was the first time Plaintiff was out for an extended period of time due to injury.

23. As a result of this belief Morrison failed to act in accordance with BOP policy causing Plaintiff to lose sick and vacation time and suffering emotionally.

24. Since Plaintiff's injury, Defendant was continuously updated and informed about the status of the injury and the medical instructions from Plaintiff's doctors. Defendant was also informed that Plaintiff was considered to be totally disabled and had permanent negative physical consequences due to his work related injury.

25. According to Defendant's policy, when an employee is disabled, Defendant is to reasonably accommodate the employee's disability in the form of a Temporary Alternative Duty assignment ("TAD").

26. Although Plaintiff was disabled and could neither stand nor walk for long periods of time, he was able to perform the essential functions of his job in a sedentary position. Therefore, pursuant to Defendant's policy and federal law, Plaintiff was entitled to a reasonable accommodation.

27. However, despite numerous doctors' notes and repeated requests for accommodation, Defendant denied Plaintiff's requests while also threatening disciplinary action including removal if he did not return to work.

28. Upon information and belief, White employees with disabilities were provided with reasonable accommodations.

29. In or around September of 2007, Plaintiff was ordered to return to work by Defendant. However, the request to return to work was against his doctor's orders and so Plaintiff declined and was inappropriately marked AWOL.

30. On October 31, 2007, Plaintiff was assigned a Temporary Alternative Duty ("TAD") assignment to monitor the phones in the Urine Analysis room in a seated position. The position required him to work five days a week for approximately four hours a day.

31. However, Plaintiff did not return to work until on or about November 5, 2007 pursuant to his doctor's orders. Thereafter, he worked in the Urine Analysis room.

32. On December 27, 2007, Plaintiff filed a complaint of race and disability discrimination with the EEO against Defendant for forcing him to return to work and marking him AWOL for the time his doctor's ordered him to not return to work.

33. On March 12, 2008, Dr. Peter DiPaolo, Plaintiff's Orthopedic Surgeon issued a letter indicating that Plaintiff had specific work restrictions including he was not to walk, nor stand and that Plaintiff must sit on a chair with lumbar support and arm rests. A copy of this letter was provided to Defendant.

34. From March of 2008 until April of 2008, Plaintiff was directed by Captain N'Diaye not to come into work. During this time, Plaintiff's vacation and sick time was inappropriately being charged instead of being issued Leave without Pay ("LWOP").

35. On April 1, 2008, Plaintiff was issued a new TAD assignment working in the front lobby of MCC-NY at the x-ray machine from 4pm to 8pm, Monday to Friday. This assignment was to provide security and monitor the x-ray machine.

36. However, this TAD assignment was not a reasonable accommodation for Plaintiff's disability. It required Plaintiff to stand on a mat and manipulate various buttons on the X-Ray machines.

37. Upon information and belief, there were sedentary positions available, which would have constituted a reasonable accommodation.

38. Plaintiff was not assigned to these other sedentary positions due to his race, color disability and in retaliation for filing a complaint with the EEO office.

39. On April 7, 2008, Plaintiff arrived to his new TAD assigned in the front lobby of MCC-NY with a leg brace on. He was provided a stool to sit on and a milk crate to elevate his injured foot.

40. Plaintiff complained that day to the shift Lieutenant Diggins that the stool and the milk crate were not reasonable accommodations. While he was provided with a chair, he was not provided with something to replace the milk crate and elevate his injured foot appropriately. Additionally, the functionality of the x-ray machines required that Plaintiff stand up and process every individual who came to the building. On April 8, 2008, Plaintiff complained to Captain N'Diaye that the TAD assignment was not accommodating his disability. Plaintiff requested a new assignment.

41. On April 16, 2008, Plaintiff met with Assistant Warden Dowd and Safety Manager

Butler to discuss the TAD assignment, the inappropriateness of using a milk crate to elevate Plaintiff's leg, and their refusal to follow his doctor's recommendations. Instead of addressing Plaintiff's concerns they ended the meeting without discussing a single issue.

42.  From April 7, 2008 until Plaintiff was reassigned to another TAD assignment, he was forced to work with a milk crate to elevate his leg. This was not a reasonable accommodation.

43.  On September 16, 2008, Plaintiff was given another TAD assignment to a full duty position in "Building 4." This was actually an unheated storage warehouse in Brooklyn.

44.  Defendants were aware that a reasonable accommodation required that Plaintiff be permitted to be in a sedentary position as his disability affected his ability to stand and walk.

45.  Despite this knowledge, and in direct contravention of Doctor's orders, Defendants instructed Plaintiff to spend his day walking around the warehouse.

46.  This failure to provide a reasonable accommodation caused further damage to Plaintiff's injury.

47.  Defendants failed to provide handicap parking at the various facilities Plaintiff was assigned to. Thus, forcing him to walk longer distances than he should have had to, aggravating his injury further.

48.  Plaintiff was not provided with a reasonable accommodation for his disability and was given unreasonable TAD assignments because of his race and in retaliation for his complaints of discrimination.

49. Unlike White BOP employees who received reasonable accommodations, Plaintiff was consistently denied accommodations and assigned to tasks which made his injury worse.

50. On March 3, 2009, Plaintiff filed a second claim of race, color and disability discrimination, as well as claims of retaliation with the EEO.

51. In or around September of 2009, Defendants failed to provide Plaintiff with a performance appraisal in a timely manner, in violation of Defendant's own policies.

52. Finally, when Plaintiff received a review, he was reviewed by someone other than his supervisor and the review contained false statements.

53. On November 20, 2009, Plaintiff received a letter from Captain L. N'Diaye, which was dated November 16, 2009, notifying him of the proposal to remove Plaintiff from the position of Intelligence Research Specialist with the Federal Bureau of Prisons, citing four charges.

54. The first three charges stemmed from Plaintiffs travelling with a celebrity on a commercial airliner on April 29, 2006, OVER THREE YEARS prior to the letter regarding removal.

55. The first charge alleged the misuse of Plaintiff's BOP credentials. On that day, Plaintiff was off duty at LaGuardia Airport. He was carrying a firearm. He filled out the Weapon Declaration documentation, the Port Authority Police verified that the weapon was properly secured, Plaintiff was credentialed and he was escorted to the screening site. Plaintiff strictly followed the instructions given to him by the agency charged with ensuring such security

9

measures are taken.

56.  Plaintiff did not violate any laws or any of Defendant's policies.

57.  The second charge referenced Plaintiff allegedly carrying his personal firearm onboard Delta Airline Flight 615 without checking the firearm in his checked baggage.

58.  Again, Plaintiff acted under the direction of the Port Authority Police and TSA officials and strictly followed the instructions and procedures they set out for him. Plaintiff was permitted to carry his weapon onto the plane.

59.  Additionally, the TSA Security Supervisor who handled Plaintiff's paperwork, provided a statement that she had not followed proper procedures, and that the Port Authority Police escort apologized to the TSA Security Supervisor for not doing so. At no point was Plaintiff involved in any procedural decisions, rather, he proceeded under the direction of the Port Authority Police and TSA.

60.  The third charge alleged that by travelling with a celebrity that day, Plaintiff was engaged in outside employment without agency approval. However, according to Defendants policies, Plaintiff was not violating any regulation that day as no prior approval was required.

61.  This incident was pursued by various governmental agencies in 2006 and 2007. It was only after Plaintiff filed his complaints of discrimination that OVER THREE YEARS LATER these matters suddenly reappeared and were so significant as to suddenly warrant a proposal of termination.

62.  The fourth charge referred to an incident which occurred on November 16, 2007,

when Plaintiff inadvertently dropped a 24-hour key on the floor. Again, this incident was not discussed or raised again until OVER TWO YEARS LATER when Plaintiff made complaints of discrimination.

63. The timing of the charges evidences their retaliatory nature. The incidents that occurred in April of 2006 occurred approximately three and one-half years prior to the proposal to remove Plaintiff from his position, but while both complaints of discrimination were pending.

64. Additionally, based upon the notes of the Office of Inspector General, the investigation of the April 2006 incidents were completed in January of 2007. For Defendant to wait almost three years from the end of the investigation to raise charges against the Plaintiff evidences continued discrimination and retaliation.

65. It is evident from the delay in prosecuting Plaintiff for these alleged improper acts that they are pretextual in nature and utilized for the sole purpose of retaliating against Plaintiff.

66. Plaintiff received a termination letter dated July 7, 2010 from Warden Hastings, removing Plaintiff from his position as an Intelligence Research Specialist with the Federal Bureau of Prisons.

67. Plaintiff's termination was a direct result of Plaintiff's claims of discrimination and retaliation.

## AS AND FOR PLAINTIFF'S FIRST CAUSE OF ACTION
## AGAINST DEFENDANT
## FOR VIOLATION OF THE AMERICANS WITH DISABILITIES ACT

68. Plaintiff was discriminated against due to his disability.

69. Plaintiff was disabled and could not perform the major life functions of walking and standing for a long period of time. However, he was able to perform the essential functions of his job with a reasonable accommodation.

70. A reasonable accommodation was easily obtainable but denied with no rational basis.

71. Plaintiff suffered discrimination because of his disability and the discrimination revealed itself as he was denied reasonable accommodations.

72. This is in direct violation of the Americans with Disabilities Act.

73. As a result of this illegal action, Plaintiff has been damaged by having lost wages and benefits. Additionally, Plaintiff has been physically and emotionally damaged in an amount that is not presently calculable due to the ongoing and future effects.

### AS AND FOR PLAINTIFF'S SECOND CAUSE OF ACTION AGAINST DEFENDANT FOR VIOLATION OF 42 U.S.C. §1981 *et. seq.*

74. Plaintiff was discriminated against due to his race, color and in retaliation for complaining of the disparate treatment he received as a Black employee for Defendant.

75. This discrimination has revealed itself in harassment, a hostile work environment, his demotion, and termination.

76. Defendant did so in whole or in part because of Plaintiff's race, color and disability.

77. This is in direct violation of 42. U.S.C. §1981 *et. seq.*

78. As a result of this illegal action, Plaintiff has been damaged by having lost wages and benefits and ultimately by being terminated. Additionally, Plaintiff has been physically and

emotionally damaged in an amount that is not presently calculable due to the ongoing and future effects.

## AS AND FOR PLAINTIFF'S THIRD CAUSE OF ACTION
## FOR VIOLATION OF TITLE VII

79.     Plaintiff was discriminated against due to his race for complaining of the disparate treatment he received as a Black employee for Defendant.

80.     This discrimination has revealed itself in harassment, a hostile work environment, and termination.

81.     This is in direct violation of Title VII (Civil Rights Act of 1964, as amended).

82.     As a result of this illegal action, Plaintiff has been damaged by having lost wages and benefits since his demotion and termination. Additionally, Plaintiff has been physically and emotionally damaged in an amount that is not presently calculable due to the ongoing and future effects.

## AS AND FOR PLAINTIFF'S FOURTH CLAIM
## FOR VIOLATION OF THE NEW YORK STATE HUMAN RIGHTS LAW

83.     Plaintiff was discriminated against due to his race, color, disability and in retaliation for complaining of discrimination.

84.     This discrimination has revealed itself in harassment, a hostile work environment, and termination.

85.     This is in direct violation of the New York State Human Rights Law, Executive Law § 290 et. seq.

86. As a result of this illegal action, Plaintiff has been damaged by having lost wages and benefits since his demotion and termination. Additionally, Plaintiff has been physically and emotionally damaged in an amount that is not presently calculable due to the ongoing and future effects.

## AS AND FOR PLAINTIFF'S FIFTH CLAIM FOR VIOLATION OF THE NEW YORK CITY HUMAN RIGHTS LAW

87. Plaintiff was discriminated against on account of his race, color, and in retaliation for his complaints of discrimination.

88. This discrimination revealed itself in harassment, a hostile work environment, and his termination.

89. This is in direct violation of the New York City Human Rights Law, New York City Administrative Code § 8-107.

90. As a result of this illegal action Plaintiff has been damaged by having lost wages since his termination. Additionally, Plaintiff has been physically and emotionally damaged in an amount that is not presently calculable due to the ongoing and future effects.

## AS AND FOR PLAINTIFF'S SEVENTH CAUSE OF ACTION AGAINST DEFENDANT FOR RETALIATION IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT

91. Plaintiff was discriminated against due to his disability.

92. A reasonable accommodation was easily obtainable but denied with no rational basis.

93. Plaintiff complained about disability discrimination.

94. Plaintiff was subjected to retaliation for his complaints in the form of harassment, a hostile work environment, demotion, and termination.

95.   This is in direct violation of the Americans with Disabilities Act. As a result of this illegal action, Plaintiff has been damaged by having lost wages and benefits. Additionally, Plaintiff has been physically and emotionally damaged

## AS AND FOR PLAINTIFF'S EIGHTH CAUSE OF ACTION AGAINST DEFENDANT FOR RETALIATION IN VIOLATION OF TITLE VII

96.   Plaintiff is a Black male and was discriminated against due to his race as an employee for Defendant.

97.   This discrimination has revealed itself in harassment, a hostile work environment, and termination.

98.   Plaintiff complained about the race discrimination.

99.   Plaintiff was subjected to retaliation for his complaints in the form of harassment, a hostile work environment, demotion, and termination.

100.   This is in direct violation of Title VII ("Civil Rights Act of 1964, as amended).

101.   As a result of this illegal action, Plaintiff has been damaged by having lost wages and benefits since his demotion and termination. Additionally, Plaintiff has been physically and emotionally damaged in an amount that is not presently calculable due to the ongoing and future effects.

## AS AND FOR PLAINTIFF'S NINTH CAUSE OF ACTION AGAINST DEFENDANT FOR RETALIATION IN VIOLATION OF THE NEW YORK STATE HUMAN RIGHTS LAW

102.   Plaintiff was discriminated against on account of his race, color, disability and in

retaliation for complaining of discrimination.

103. This discrimination has revealed itself in harassment, a hostile work environment, and termination.

104. Plaintiff complained of discrimination.

105. Plaintiff was subjected to retaliation for his complaints in the form of harassment, a hostile work environment, demotion, and termination.

106. This is in direct violation of the New York State Human Rights Law, Executive Law § 290 et. seq.

107. As a result of this illegal action, Plaintiff has been damaged by having lost wages and benefits since his demotion and termination. Additionally, Plaintiff has been physically and emotionally damaged in an amount that is not presently calculable due to the ongoing and future effects.

### AS AND FOR PLAINTIFF'S TENTH CAUSE OF ACTION AGAINST DEFENDANT FOR RETALIATION IN VIOLATION OF THE NEW YORK CITY HUMAN RIGHTS LAW

108. Plaintiff was discriminated against on account of his race, color, and in retaliation for his complaints of discrimination.

109. Plaintiff complained of discrimination.

110. Plaintiff was subjected to retaliation for his complaints in the form of harassment, a hostile work environment, demotion, and termination.

111. This is in direct violation of the New York City Human Rights Law, New York City

Administrative Code § 8-107.

112. As a result of this illegal action Plaintiff has been damaged by having lost wages since his termination. Additionally, Plaintiff has been physically and emotionally damaged in an amount that is not presently calculable due to the ongoing and future effects.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff demands judgment on his first, second, third, fourth, fifth, sixth, seventh, eighth, ninth, and tenth causes of action directing Defendant to compensate Plaintiff for his economic loss, humiliation, embarrassment, physical and emotional distress, and mental anguish caused by Defendant's violations of the law alleged in this Complaint. Plaintiff also seeks an award of punitive damages where warranted that are commensurate with Defendant's ability to pay and so as to deter Defendant's future wanton, willful and malicious acts as outlined in the Complaint. Plaintiff also seeks costs and disbursements of this action, including reasonable attorney's fees and costs, and any such other and further relief the Court may deem just and proper.

DATED: January 18, 2011
Garden City, NY 11530

Robert J. Valli, Jr. (RV/9995)
Valli Kane & Vagnini, LLP
600 Old Country Road, Suite 519
Garden City, NY 11530
516-203-7180