UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

RODERICK JENKINS,

                              Plaintiff,                    Civil Action No.
                                                                    CV 11-0268

     v.

                                                                    (Garaufis, J.)
                                                                    (Pollak, M.J.)

ERIC H. HOLDER, Attorney General

                              Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


# REPLY MEMORANDUM OF LAW IN SUPPORT OF
# DEFENDANT'S MOTION FOR SUMMARY JUDGMENT


                                                                             LORETTA E. LYNCH
                                                                             United States Attorney
                                                                             Eastern District of New York
                                                                             Attorney for Defendant
                                                                             610 Federal Plaza, 5th Floor
                                                                             Central Islip, New York 11722
                                                                             (631) 715-7833

Kenneth M. Abell
Assistant United States Attorney
     (Of Counsel)

Date of Service & Filing: June 10, 2013

**PRELIMINARY STATEMENT**

Defendant Eric H. Holder, Attorney General of the United States of America, by his attorney, Loretta E. Lynch, United States Attorney for the Eastern District of New York, Kenneth M. Abell, Assistant U.S. Attorney, of counsel, respectfully submits this reply memorandum of law in support of his motion for summary judgment pursuant to Fed. R. Civ. P. 56.

In his response to defendant's motion, plaintiff admitted 235 of the 250 material facts defendant brought to the Court's attention in his Local Rule 56.1 Statement of Undisputed Material Facts. See Plaintiff's Response to Defendant's Statement of Facts ("Pl.'s 56.1 Resp."). Among the facts plaintiff admitted, which now constitute stipulated statements of undisputed fact, are:

- On April 29, 2006, plaintiff used his BOP credentials to bring his Glock 26 onto a commercial flight out of LaGuardia Airport while he was off duty, traveling with Sean Combs and, according to Combs, providing private security. See Pl.'s 56.1 Response ¶¶ 5-9.

- Plaintiff was later investigated by the Department of Justice's Office of Inspector General ("OIG"), which interviewed several witnesses and collected statements from numerous law enforcement agents. Id. ¶ 19.

- The OIG investigation, which concluded on October 12, 2007, found that plaintiff had violated BOP Standards of Employee Conduct and a BOP Program Statement. Id. ¶¶ 25-26, 29, 228.

- The matter was then referred to BOP's Office of Internal Affairs ("OIA") for appropriate administrative action. On April 24, 2009, OIA also sustained several charges of misconduct against plaintiff. Id. ¶ 30, 35.

- Plaintiff's "main argument" as to why his removal was discriminatory and/or retaliatory is that BOP waited "close to three years" to bring him up on charges. Id. ¶ 88, 235-37.

These admissions – in conjunction with defendant's legitimate, non-discriminatory explanations regarding the timing issue – make plain that there is no genuine issue of material fact for trial. Among other things, plaintiff has not met his burden of showing that defendant's stated basis for

1

the decision to remove him – i.e., sustained charges of serious misconduct by two independent investigative bodies – was a mere pretext for discrimination and/or retaliation. Plaintiff's response also fails to identify any similarly situated individuals to show that he was treated differently than other employees. Indeed, he provides no evidence – direct or circumstantial – to support his claims that he was treated differently because of his race or alleged disability. Moreover, with respect to his retaliation claim, plaintiff's response to defendant's motion appears to be based entirely on what he perceives to be irregularities in the way he was investigated and disciplined. As shown in defendant's opening memorandum, and in greater detail below, defendant has legitimate explanations for each of the alleged irregularities plaintiff raises.

Finally, in connection with defendant's argument that plaintiff failed to exhaust his administrative remedies, plaintiff concedes that he filed his complaint "14 days earlier than permitted." See Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment ("Pl.'s Mem.") at 21, 24. In an effort to save what he acknowledges are premature claims, plaintiff argues that certain equitable principles militate in favor of letting this action proceed. As shown below, all of plaintiff's equitable arguments lack merit.

## ARGUMENT

### A. Plaintiff Failed to Carry His Burden of Showing Pretext[1]

Under the well-established standard applicable to plaintiff's claims, plaintiff was required not only to make out prima facie cases of discrimination or retaliation but also to show, by a preponderance of the evidence, that defendant's articulated reason for his removal was not the true

---

[1] For the reasons set forth in defendant's opening memorandum, defendant maintains that plaintiff has failed to make out prima facie cases of discrimination or retaliation. However, this reply brief will focus on the pretext component of plaintiff's burden because plaintiff does not address it in his response.

2

reason and was instead a pretext for discrimination or retaliation.  See, e.g., McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-05 (1973); Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 252-53 (1981).  Thus, "[e]vidence that the reason is false . . . is central to establishing pretext under the third prong of the McDonnell Douglas-Burdine test." Henry v. Daytop Village, Inc., 42 F.3d 89, 94 n.1 (2d Cir. 1994).  The fact finder must have a sufficient basis in evidence for rejecting the employer's explanation and it is plaintiff's burden to come forward with that evidence.  See St. Mary's Honor Ctr. v. Hicks, 509 U.S. 519 (1993).

### 1. Plaintiff's Response Does Not Even Address Pretext

Curiously, plaintiff's response memorandum does not even address the pretext portion of his burden.  The first indication of this is found in the Table of Contents, which has section headings relating to whether plaintiff stated a prima facie case but no sections addressing (or even mentioning) pretext.  See Pl.'s Mem., Table of Contents, Sections II.A. and III.A.  The body of plaintiff's brief confirms that this was not just an oversight in the Table of Contents.  For example, plaintiff argues that "there are questions of fact that should be determined by the Jury as there is at the very least, an inference of discrimination and retaliation."  See Pl.'s Mem., at 2.  Plaintiff goes on to argue that "the facts give rise to an inference of discrimination and retaliation and the question must be left for the jury to answer."  See id. at 18.  An inference of discrimination, however, only relates to whether plaintiff made out a prima facie case; it does not speak to whether defendant's stated reason is pretextual.  See e.g., Austin v. Ford Models, 149 F.3d 148, 152 (2d Cir. 1998) (a prima facie case entails "circumstances giving rise to an inference of discrimination.")[2]

---

[2] Plaintiff only uses the word "pretext" once in his 25-page memorandum when he states: "These charges were used to terminate him but are simply a pretext.  The facts give rise to an inference of discrimination." Pl.'s Mem., at 15. There is, however, no pretext-based analysis associated with this errant comment.

3

Even assuming arguendo that plaintiff has made out a prima facie case of discrimination and/or retaliation, a failure to show pretext is, in and of itself, fatal to his claims. Govori v. Goat Fifty LLC, No. 12-0857-CV, 2013 WL 1197770, at *2 (2d Cir. Mar. 26, 2013) (affirming summary judgment for defendant because plaintiff failed to show pretext; both courts assumed she had made out a prima facie case); Joseph v. New York City Dep't of Corr., 10-CV-1265 (NGG), 2011 WL 1843162, at *9 (E.D.N.Y. May 13, 2011) (granting summary judgment to defendants because "[e]ven assuming, arguendo, that [plaintiff] has set forth a prima facie case of retaliation," he did not bring "forth even an iota of evidence demonstrating that any of these actions were merely pretext").

### 2. The Validity Of The Sustained Charges Against Plaintiff Is Not At Issue

Plaintiff also makes the misguided argument that the charges against him were "obvious[ly] unsustainable." See Pl.'s Mem., at 8, 15.[3] This argument is legally and factually frivolous. Legally, this argument is, among other things, at odds with Magistrate Judge Pollak's well-reasoned decision – after extensive briefing by the parties – that the validity or accuracy of the investigative process is not relevant to plaintiff's claims. See Def.'s 56.1 Stmt., ¶¶ 242-43; see also Docket Sheet, Entries 16, 17, 19, 20, 21, 35, 36, 37. Indeed, the Second Circuit has definitively held that the reliability of the evidence supporting an employer's decision to terminate an employee is irrelevant. See McPherson v. N.Y. City Dep't of Educ., 457 F.3d 211, 212-13 (2d Cir. 2006) ("the factual validity of the underlying imputation against the employee is not at issue"). Accordingly, "[i]n a discrimination case . . . we are decidedly not interested in the truth of the allegations against plaintiff. We are interested in what 'motivated the employer.'" Id. (citing U.S. Postal Serv. Bd. of Governors v. Aikens, 460 U.S. 711, 716 (1983)).

---

[3] In this same vein, plaintiff devotes significant portions of his brief to arguing that he did not violate BOP policies in connection with his activities on April 29, 2006. Pl.'s Mem., at 5-6.

4

In light of Judge Pollak's decision – and the extensive body of case law that supports it – plaintiff's insistence that the charges against him were "obviously unsustainable" is irrelevant. In addition, from a factual perspective, this argument is befuddling because plaintiff expressly admitted that OIG and OIA sustained charges against him. See Pl.'s 56.1 Response ¶¶ 25-26, 29, 30, 35, 228.

### 3. Plaintiff's Timing Argument Has Been Rejected and is Otherwise Unavailing

Even though he does not couch it as such, plaintiff appears to argue that the timeline of the investigations into his behavior, and the disciplinary process that followed, show that the sustained charges were a pretext for discrimination and/or retaliation. Indeed, ever since the outset of this case, plaintiff has been hung up on the fact that he was not notified of his proposed termination until November 16, 2009, even though he engaged in most of the misconduct that led to his termination on April 29, 2006. See Def.'s 56.1 Stmt., ¶¶ 88, 235-37. In fact, plaintiff admits that this is his "main argument" in support of his claims, see id., and he repeats it several times in his responsive memorandum. See Pl.'s Mem., at 2, 5.

Similar to his argument regarding the merit of the charges against him, however, this argument fails to recognize that from April 29, 2006 until April 24, 2009, the matter was in the hands of independent investigative bodies – i.e., beyond the control or influence of the Human Resources Department at BOP. This fact is not in dispute, as plaintiff has expressly admitted that the individuals involved in his removal were not involved in the investigative processes. See id. ¶¶ 102, 103, 108. In all events, plaintiff was provided with his notice of proposed termination in November 2009 – less than seven months after the completion of the investigative process. As Judge Pollak has already held, there is no evidence "to support plaintiff's conjecture that the investigations were motivated by discriminatory animus, apart from the timing issue," for which defendant already provided a "plausible and nondiscriminatory explanation." See Def.'s 56.1 Resp., ¶ 243.

5

### 4. Plaintiff's Disjointed Arguments Regarding Donald Davis Do Not Show Pretext

Plaintiff's brief contains argument regarding the discipline of another former BOP employee, Donald Davis. According to plaintiff, it was improper for BOP to modify the title of a charge against plaintiff after an Administrative Law Judge ("ALJ") did not sustain a similar charge against Davis. See Pl.'s Mem., at 13 ("Connors admitted that there were charges which were specifically changed because they wanted to ensure that the charge would be sustained."). This argument badly mischaracterizes Connors' testimony. As Ms. Connors explained during her deposition, the HR department reviews decisions from ALJs as "guidance regarding the best charge title for certain types of misconduct." See Def.'s 56.1 Stmt., ¶ 52. When questioned specifically about the Davis case and the charges against plaintiff, Connors testified that the charge was changed "to better reflect the behavior Mr. Jenkins was involved in." See Def.'s 56.1 Stmt., Ex. H at 106:11-20.

Thus, the evidence merely shows that BOP changed the charge label for plaintiff to better encompass his conduct. See id. There is nothing improper or surreptitious about this. Indeed, plaintiff admitted that OIG and OIA determined that under the specific facts of his case – i.e., that he had used his credentials to give the "impression that he was authorized by the BOP to fly armed" – he had violated BOP rules and regulations. See Def.'s 56.1 Stmt. ¶ 26. BOP simply sought to place the most appropriate charge on this conduct and, in part, reviewed the Davis decision to do so. In all events, Davis and plaintiff were not similarly situated and, thus, comparisons of their situations are of little value. For example, Davis did not engage in all of the same conduct and he was not disciplined by Warden Hastings. See Pl.'s 56.1 Resp., ¶¶ 209-12. Moreover, Davis was removed from service and his removal was ultimately upheld. See Pl.'s 56.1 Counter-Stmt., Ex. 22. Thus, plaintiff cannot (and does not) argue that Davis was treated differently than he was.

6

### 5. **Plaintiff's Arguments About Perceived Irregularities Are Easily Refuted**

Plaintiff also spends considerable time discussing what he believes to be "violations of typical policy and procedure" in connection with his dismissal. See Pl.'s Mem., at 18. In identifying these alleged irregularities, plaintiff ignores the fact that he has already admitted many of the legitimate, non-discriminatory explanations defendant provided for the process that was followed here. He also misreads several documents upon which he relies. Specifically:

- Compare argument: "Instead of following standard protocol and having local HR work on Plaintiff's proposed discipline, the Northeast Region ("NERO") requested the file." See Pl.'s Mem., at 2.

    - With admission: The NY facilities "are often backlogged" and "it is not uncommon for NERO to prepare proposal letters for these facilities." See Pl.'s 56.1 Resp., ¶¶ 64-66.

- Compare argument: BOP violated policy by altering the title of charges against plaintiff when drafting the proposal letter. See Pl.'s Mem., 12-13.

    - With admission: "During the drafting process, it is not uncommon for the HR department to change the title of the charges that were investigated by OIG and/or OIA." See Pl.'s 56.1 Resp., ¶ 46; see also ¶¶ 47-50.

- Compare argument: BOP violated policy by changing the charges "without notice" to plaintiff and using the new charges to support termination. See Pl.'s Mem., 13.

    - With admission: Plaintiff was notified of the charges against him in the proposal letter and did not "raise any concerns or arguments regarding the title of the charges." See Pl.'s 56.1 Resp., ¶¶ 81-82.

- Compare argument: BOP violated policy by having a MCC employee act as the proposing official instead of a department head in DC. See Pl.'s Mem., at 4, 13.

    - With admission: Proposal letters are "more often than not" given to the department head for issuance. See Pl.'s Counter-Stmt. ¶ 47; see also Def.'s 56.1 Stmt., Ex. H at 47:1-22 (no policy on who can act as proposing official).

- Compare argument: Discussion of plaintiff's injury and complaints of discrimination in the talking points memo served no legitimate purpose and were irrelevant. See Pl.'s Mem., at 7, 14, 18.

- - With admission: The talking points memo "tracks" plaintiff's written response wherein "plaintiff referenced his ankle injury and alleged that he had suffered discrimination." See Pl.'s 56.1 Resp., ¶¶ 112, 115.

- Compare argument: "This was the first time that Rodriguez was asked to provide an overview and a response to a rebuttal letter." See Pl.'s Mem., at 6.

    - With admission: The requestor of the overview, Warden Hastings, had just begun her employment at the MCC and was focused almost exclusively on making arrangements for the Gitmo 5. See Pl.'s 56.1 Resp. ¶¶ 93, 100-01.

- Argument: "Pursuant to BOP policy, Warden Hastings, as the CEO, was not allowed to view information from the investigative file when making her determination." Pl.'s Mem., at 8.

    - Response: The document plaintiff cites changed the review and approval process for investigative packets (i.e., before finalization) by removing CEOs from the process; however, the memo states that OIA should forward the packet "to the CEO for action." Pl.'s Counter-Stmt. ¶¶ 161, Ex. 29.

- Argument: BOP violated policy by including "biased comments, thoughts and opinions" in the talking points memo to Warden Hastings. See Pl.'s Mem., 6, 7, 14.

    - Response: Ms. Marin-Rodriguez testified that her role was to compare plaintiff's statements in his written response against the information in the investigative file. See Def.'s 56.1 Stmt., Ex. I, at 123:23-124:8. If there were discrepancies, she noted those for the Warden. In all events, plaintiff did not identify any applicable policy or procedure that was violated.

- Argument: It was atypical for Connors to draft and review plaintiff's disciplinary letters because she was also involved in settlement discussions regarding plaintiff's previous EEO complaints. See Pl.'s Mem., at 3, 4, 17.

    - Response: Lois Swiderski, not Connors, drafted the proposal letter. See Def.'s 56.1 Stmt., ¶¶ 67-74. In all events, plaintiff points to no evidence to suggest Connors should not have been involved in reviewing plaintiff's disciplinary letters. She also testified that his prior complaints had nothing to do with this termination. See id., Ex. H at 105:13-16.

\* \* \*

In light of the foregoing, plaintiff has failed to identify any "violations of typical policy and procedure" and has certainly not identified any irregularities that could rise to the level of showing that

8

defendant's stated basis for removing him – sustained findings of misconduct by two independent investigative bodies – was a pretext for discriminatory or retaliatory animus. Plaintiff's failure to show pretext is fatal to all of his claims. Defendant is, thus, entitled to judgment as a matter of law.

**B.    There Are No Equitable Grounds to Excuse Plaintiff's Admitted Failure To Administratively Exhaust His Claims**

Plaintiff admits that his complaint was prematurely filed, see Pl'.s Mem., at 21, 24, but contends that equitable grounds exist to save his claims. His contentions lack merit.

**No Undue Prejudice or Irreparable Harm**: Plaintiff's lead argument is that he misfiled a *charge* of discrimination with the EEOC, as opposed to a formal *complaint* with BOP's EEO office, and was concerned that he needed to file in federal court within 90 days after the EEOC dismissed the charge for lack of jurisdiction. Id. at 21.[4] An erroneous reading of the relevant avenues for recourse does not, however, provide a basis for an equitable waiver of the exhaustion requirement – even when counsel relied on a reasonable, yet incorrect, view of the law. See Houser v. Blank, No. 10-CV-3105, 2012 WL 3188769, at *4 (S.D.N.Y. Aug. 3, 2012); Pollock v. Chertoff, 361 F.Supp.2d, 126, 131-32 (W.D.N.Y. 2005) (equitable tolling inappropriate because "counsel knew or should have known" of administrative requirements "regardless of whether plaintiff could be considered a federal employee or a private employee"). This principle is especially applicable here, given that plaintiff's counsel are self-proclaimed "employment litigation professionals who have handled thousands of trials and mediations." See http://newyorkemploymentlawattorneys.com/firm-overview/

Plaintiff also contends – without citation to any legal authority – that he has been harmed because defendant did not raise this argument at the outset of this litigation. See Pl.'s Mem., at 21.

---

[4] As set forth in defendant's opening memorandum, plaintiff (as a federal employee) cannot file a *charge* of discrimination with the EEOC and must instead file a *complaint* with BOP's EEO office. See Def.'s Mem., at 9, fn 4; see also 29 C.F.R. § 1614.

9

This contention is devoid of merit. There is nothing that prohibits defendant from taking discovery on this argument before presenting it to the Court and, in all events, defendant put plaintiff on notice by raising it as an affirmative defense in his answer. Plaintiff also argues that it is "axiomatic" that defendant had ample time to investigate his allegations relating to his removal because defendant had already investigated two of his prior EEO complaints. Id. at 22. This argument fails to mention that plaintiff's prior complaints had nothing at all to do with his removal.

**No Futility**: Plaintiff contends that because defendant removed plaintiff during the pendency of his earlier EEO complaints, plaintiff "believed that a third EEO claim was futile," so he "made the decision to file charges with both the EEO and EEOC." Id. This tortured logic only highlights plaintiff's ignorance regarding the required procedures for filing a federal sector discrimination claim. In all events, however, "[a] pessimistic prediction or a hunch that further administrative proceedings will prove unproductive is not enough to sidetrack the exhaustion rule." See, e.g., Portela-Gonzalez v. Sec'y of the Navy, 109 F.3d 74, 78 (1st Cir. 1997).

**Policy Behind Exhaustion Not Served**: Finally, plaintiff erroneously contends that "the policy reasons behind the exhaustion requirement were all fulfilled." Pl.'s Mem., at 23. This argument is based on his misleading argument that his "two prior EEO complaints alleged similar claims of discrimination." Id. at 24. As set forth above, his two prior complaints did not relate to his termination. Moreover, plaintiff filed this federal complaint a mere three months after he administratively filed his EEO complaint, a time period which did not permit adequate time for the EEO to investigate his removal claims. Accordingly, there is no merit to plaintiff's suggestion that the policy reasons underlying the exhaustion requirement in the instant action have been fulfilled.

## CONCLUSION

For all the foregoing reasons, in addition to those set forth in his opening memorandum,

defendant Eric H. Holder, Attorney General of the United States of America, respectfully requests that this Court grant his motion for summary judgment dismissing plaintiff's complaint, in its entirety, with prejudice, and for such other and further relief as this Court deems just and proper.

Dated:  Central Islip, New York
          June 10, 2013

                                        Respectfully submitted,

                                        LORETTA E. LYNCH
                                        United States Attorney
                                        Eastern District of New York
                                        Attorney for Defendant
                                        610 Federal Plaza, 5th Floor
                                        Central Islip, New York 11722

                           By:     /s/ Kenneth M. Abell
                                        KENNETH M. ABELL (KA 2035)
                                        Assistant U.S. Attorney
                                        (631) 715-7833
                                        Kenneth.Abell@usdoj.gov